IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| State of North Dakota, d/b/a Bank of North Dakota by and through Student Loans of North Dakota, | ) ) ) ) |
| Appellant, | ) ) ) | 
| vs. | ) ) |
| Christine Marie Haugen, | ) ) |
| Appellee. | ) |

**ORDER AFFIRMING BANKRUPTCY COURT**

Case No. 1:22-cv-179

Before the Court is the Appellant's appeal from the decision of the United States Bankruptcy Court. The State of North Dakota, d/b/a Bank of North Dakota by and through Student Loans of North Dakota ("North Dakota"), contends the Bankruptcy Court erred in discharging Appellee Christine Haugen's ("Haugen" or "Debtor") student loan debt under 11 U.S.C. § 523(a)(8). See Doc. No. 5. For the reasons set forth below, the Court affirms the decision of the Bankruptcy Court.

**I.     BACKGROUND**

Haugen filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code on September 7, 2021, and received a general discharge on December 21, 2021. On October 8, 2021, Haugen filed an adversary proceeding requesting the Bankruptcy Court discharge a student loan debt she owes to North Dakota. The Bankruptcy Court held a trial on August 16, 2022. On October 3, 2022, the Bankruptcy Court entered a "Memorandum and Order" (Doc. No. 1-1) and "Judgment" (Doc. No. 1-2) discharging Haugen's student loan debt owed to North Dakota. North

1

Dakota timely filed a notice of appeal. See Doc. No. 1. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

Christine Haugen is currently 40 years old and is in good health. She has been married to Travis Haugen for 15 years. Christine and Travis Haugen have three minor children. Their youngest child was born in January 2022, after the Debtor filed for bankruptcy. Travis Haugen did not file for bankruptcy.

Haugen attended Covenant Bible College, where she earned a Certificate in Biblical Studies in 2003. She then attended Oak Hills Christian College, where she studied youth ministry and left the program before graduating. In 2006 Haugen earned an Associate Degree in Legal Administration from Aakers Business College, now known as Rasmussen University, in Fargo, North Dakota.

From 2012 to 2018 Haugen worked at Home Depot. On June 20, 2018, she obtained employment at Integreon Management Solutions ("Integreon"). Haugen initially worked as a workflow coordinator earning $15 per hour. Her duties included communicating directly with clients and coordinating the tasks of specialists/operators. She then accepted a less demanding position as a specialist/operator at Integreon making $12 per hour. According to Haugen, she changed positions because she found the workflow coordinator position to be too stressful. Haugen currently works approximately 40 hours per week. As a specialist/operator she processes and completes legal documents for clients. Haugen works from 3:00 p.m. to 11:00 p.m. At the trial Haugen testified that she earns $13.13 per hour at the regular pay rate until 7:00 p.m., when her wage increases to the evening pay rate of $14.73 per hour. Haugen works overtime when it is available. Travis Haugen works in customer service at U.S. Bank Service Center, where he has

worked for approximately 16 years. Travis Haugen works from 5:00 a.m. to 1:30 p.m. Working different shifts allows the Haugen family to avoid daycare costs and share one vehicle.

On September 20, 2007, Haugen entered into a student loan agreement with North Dakota to serve as a cosigner on her mother, Debra Jean Marchus's ("Marchus") student loan. On September 26, 2007, North Dakota approved the student loan and subsequently dispersed $14,535 to Marchus. Marchus did not make any payments on the loan while BND administered it. North Dakota's typical loan repayment period is 10 years, but a variety of payment options were available to Marchus, including: extended term repayment, consolidation, deferment, forbearance, and interest-only payments. The loan was in forbearance for 22 months and Marchus deferred payments for a total of 68 months. North Dakota sent Haugen annual cosigner account summaries that provided the cosigned balance and status of the loan. In or about August 2018, North Dakota found Marchus in default. After the loan was in default, Marchus attempted to negotiate a payment plan or an additional forbearance, but North Dakota refused. In January 2020, North Dakota initiated a lawsuit against Marchus and Haugen seeking a judgment on the student loan debt. On June 18, 2020, Marchus petitioned for bankruptcy relief under Chapter 7. She also filed an adversary proceeding seeking to discharge her student loan debt to North Dakota. On May 18, 2021, the Bankruptcy Court concluded the student loan debt imposed an undue hardship on Marchus and discharged it. Consequently, the obligation to pay the cosigned student loan now rests solely with Haugen.

The current principal balance of the loan is $38,490.30. Haugen has not made any payments on the loan. She is not eligible for forbearance, deferment, or income-contingent repayment options because the loan is in default. Haugen is only eligible for the standard 10-year repayment plan. Her monthly payments to North Dakota would be approximately $450 per month. During the

adversary proceeding, Haugen made settlement offers that North Dakota did not accept. Through the adversary proceeding, Haugen only seeks discharge of the loan she cosigned for Marchus. She does not seek discharge of student loans she borrowed for her own education. She makes monthly payments of $89 on her own student loans through an income-based repayment plan.

## II.     STANDARD OF REVIEW

When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court. Fix v. First State Bank of Roscoe, 559 F.3d 803, 808 (8th Cir. 2009). Findings of fact are evaluated for clear error, and all legal determinations made by the bankruptcy court are reviewed *de novo*. Id. Section 523(a)(8) the Bankruptcy Code specifies that student loans will not be discharged unless failure to discharge would constitute an "undue hardship" on the debtor or the debtor's dependents. In re Reynolds, 425 F.3d 526 (8th Cir. 2005). The debtor has the burden of establishing undue hardship by a preponderance of the evidence. In re Walker, 650 F.3d 1227, 1230 (8th Cir. 2011). To assess whether the debtor has met this burden, the Eighth Circuit Court of Appeals applies a totality-of-circumstances test, under which it considers: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the reasonable living expenses of the debtor and her dependents; and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case." Id. (citations omitted).

The determination of whether declining to discharge a debtor's student loan debt would pose an undue hardship is a question of law, which is reviewed *de novo*. Reynolds, 425 F.3d at 531. The subsidiary findings of fact on which the legal conclusion is based are reviewed for clear error. Id. A bankruptcy court's findings of fact are not to be upset unless, after reviewing the entire record, the district court is "left with the definite and firm conviction that a mistake has been

4

made." Walker, 650 F.3d at 1230 (8th Cir. 2011) (citations omitted). "This standard requires a reviewing court to conclude the trial court made a definite mistake based upon the record as a whole. The trial court's findings of fact are given deference and when more than one interpretation of evidence is possible there is no clear error." In re Piccinino, 577 B.R. 560, 563 (B.A.P. 8th Cir. 2017) (citations omitted).

### III.   LEGAL DISCUSSION

North Dakota argues the Bankruptcy Court erred in determining Haugen met her burden to prove repaying the student loan debt to North Dakota would result in an undue hardship under 11 U.S.C. § 523(a)(8). Haugen argues the Bankruptcy Court properly determined she met her burden of proof of undue hardship and her loans are subject to discharge.

#### A.   PAST, PRESENT, AND REASONABLY RELIABLE FUTURE FINANCIAL RESOURCES

##### 1.   INCOME

Haugen is employed full time as an operator/specialist with Integreon, working approximately 40 hours per week. At the time of trial, she worked from 3:00 p.m. to 11:00 p.m. The Bankruptcy Court found Haugen earns a wage of $13.13 per hour at the regular pay rate until 7:00 p.m., when her wage increase to an evening pay rate of $14.73 per hour. See Doc. No. 1-1, p. 3. The Bankruptcy Court acknowledged this wage reflects an increase Haugen received a few months prior to its order. The Bankruptcy Court stated that Haugen reported an individual monthly net income of $2,137.92 on her Schedule I (Doc. No. 4-13, p. 18). See Doc. No. 1-1, p. 4. When

analyzing Haugen's past, present, and reasonably reliable future financial resources, the Bankruptcy Court stated, "Debtor earns $2,137.92 per month in net income." Id. at 18.

North Dakota argues the Bankruptcy Court committed clear error by accepting an income figure that was patently false because Haugen's wage increased since she filed her Schedule I. North Dakota argues the Bankruptcy Court should have concluded Haugen's monthly income is $2,524.06, based on her paystub from August 10, 2022, which was her most recent paystub before the Bankruptcy Court. Haugen's paystub from August 10, 2022, reveals her net pay for the two-week pay period was $1,262.03, which would amount to $2,524.06 of monthly income. See Doc. No. 4-16, p. 1. North Dakota's contention fails to take into consideration Haugen's other recent paystubs, which were lower than the paystub from August 10, 2022, despite Haugen receiving the wage increase. For example, Haugen's July 25, 2022, paystub reveals net pay of $971.91, which would amount to $1,943.82 of monthly income. Not only is this figure less than the $2,524.06 figure suggested by North Dakota, it is also less than the $2,137.92 figure used by the Bankruptcy Court. Similarly, Haugen's net income totaled $1,120.54 on her paystub from July 8, 2022, which would create a monthly income of $2,241.08. This figure is lower than the figure North Dakota maintains the Bankruptcy Court should have used. Accordingly, only using Haugen's most recent paycheck to determine her net monthly income would be an inaccurate representation of her current financial resources. Even if the Bankruptcy Court used the figure suggested by North Dakota, Haugen's income would still not enable her to make $450 monthly payments. The difference between the figure proposed by North Dakota ($2,524.06) and the figure the Bankruptcy Court used ($2,137.92) is only $386.14.

North Dakota cites to *Walker* in support of its argument that the Bankruptcy Court's figure was patently false. In *Walker*, the Eighth Circuit Court of Appeals held,

> We recognize 'A court may not engage in speculation when determining net income and reasonable and necessary living expenses.' *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 780 (8th Cir.2009). In *Jesperson*, the bankruptcy court credited testimony from the debtor regarding his federal income tax obligation that was patently false, which had the effect of understating the debtor's income.

*Walker*, 650 F.3d at 1233. In *Walker*, the Eighth Circuit Court of Appeals explained the facts in *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775 (8th Cir.2009) did not rise to the level of reasonably reliable facts and circumstances and could not serve as the basis of the bankruptcy court's legal conclusions. This case is distinguishable from *Jesperson*. Whereas the bankruptcy court in *Jesperson* based its conclusion on patently false testimony, the Bankruptcy Court in the present case based the income figure on truthful information provided by Haugen in her Schedule I. The Bankruptcy Court did not base its decision on deliberately false information. Further, the Bankruptcy Court acknowledged Haugen's increased wage in its factual findings. The income figure used by the Bankruptcy Court was based on reasonably reliable facts and circumstances. Therefore, the Bankruptcy Court did not err in its findings regarding Haugen's income.

### 2. **UNDEREMPLOYMENT**

North Dakota argues the Debtor is voluntarily underemployed and the Bankruptcy Court erred when finding her inability to pay is not due to self-imposed limitations. The Eighth Circuit Court of Appeal has held, "A debtor is not entitled to an undue hardship discharge of student loan debts when [her] current income is the result of self-imposed limitations, rather than lack of job skills, and [she] has not made payments on [her] student loan debt despite the ability to do so." Jesperson, 571 F.3d at 782. Cases finding underemployment as a form of self-imposed limitation typically involve debtors that chose to work part-time or chose work that did not utilize their education. See, e.g., Piccinino, 577 B.R. at 565-66 (affirming the bankruptcy court's finding that

7

the debtor's underemployment was, to an extent, self-imposed when she did not work for two years and then worked part-time with no evidence that she considered full-time employment as an option); In re Nielsen, 518 B.R. 529, 532-35 (B.A.P. 8th Cir. 2014), aff'd, 622 F. App'x 594 (8th Cir. 2015) (affirming the bankruptcy court's finding that despite some limitations out of the debtor's control, on balance the restrictions on the debtor's ability to seek and obtain employment were largely self-imposed when she was unemployed and failed to look for full-time employment for four years prior to the filing of her bankruptcy petition).

Here, the Bankruptcy Court distinguished this case from other cases finding underemployment by explaining, "This is not a case where Debtor works part time when she is capable of full-time employment or where evidence shows that she is qualified for higher-paying jobs that are available to her. Debtor obtained an associate degree in legal administration and is using this education as a full-time operator/specialist." See Doc. No. 1-1, p. 32. In the Debtor's current role, she uses her education to complete legal processing tasks. The Bankruptcy Court properly found and considered in its analysis that "any purported lack of ambition is offset by transportation and daycare savings as well as her husband's contribution to the family finances on which she relies to pay her student loan debts and all the other reasonable and necessary expenses." See Doc. No. 1-1, p. 33. Although North Dakota correctly states that the Debtor did not directly testify that the Haugen family's lack of a second vehicle or their need for childcare limits her employment options, the Bankruptcy Court's findings were common-sense inferences. The record supports the Bankruptcy Court's determination that the Debtor is not underemployed and her lack of disposable income sufficient to pay her debt is not due to self-imposed limitations.

### 3. FUTURE FINANCIAL RESOURCES

"[T]he undue hardship analysis is dynamic in that it is forward-looking." In re Cumberworth, 347 B.R. 652, 661 (B.A.P. 8th Cir. 2006). The Court is "obligated to consider not just a snapshot of her current situation but her likely future income based upon her education and employment history." In re Brown, 378 B.R. 623, 627 (Bankr. W.D. Mo. 2007). However, the Court must not "substitute assumptions or speculation for reasonably reliable facts." In re Conway, 495 B.R. 416, 422 (B.A.P. 8th Cir. 2013), aff'd, 559 F. App'x 610 (8th Cir. 2014)

North Dakota argues Haugen's reasonably reliable future financial resources support the conclusion that repayment of the student loan debt would not impose an undue burden on her or her dependents. North Dakota also argues the Bankruptcy Court improperly considered only a snapshot of the Debtor's financial situation at the time of trial. Contrary to North Dakota's contention, the Bankruptcy Court thoroughly considered Haugen's future financial resources. See Doc. No. 1-1, pp. 18-19, 32-33. It is important to note that when the Bankruptcy Court considered Haugen's reasonably reliable future financial resources, it did not find that the debtor's income is unlikely to increase. Rather, the Bankruptcy Court indicated the Debtor's income is unlikely to increase enough to make a $450 monthly payment to North Dakota while paying all reasonable and necessary expenses. Specifically, the Bankruptcy Court held that no evidence was received that the Debtor is qualified for suitable jobs available in her community where the employer would either 1) allow her to work from home on a modified work schedule that allows her to care for her children with a salary sufficient to make a $450 monthly student loan payment or 2) pay her a salary high enough to allow the family to buy another vehicle, pay daycare expenses, and make a $450 monthly payment if she is not allowed to work from home. See Doc. No. 1-1, p. 32. The

Court agrees with the Bankruptcy Court's findings and well-reasoned analysis as to Haugen's reasonably reliably future financial resources and finds no error.

Haugen's past and present financial resources have been and are presently insufficient to service the entire debt owed to North Dakota. Haugen's reasonably reliable future financial resources are modest and insufficient to meet the monthly payment obligation to North Dakota. The Court concludes the Bankruptcy Court did not err in its factual findings as to Haugen's past, present, and reasonably reliable future financial resources.

### B.   REASONABLE AND NECESSARY LIVING EXPENSES

"To be reasonable and necessary, an expense must be modest and commensurate with the debtor's resources." Jesperson, 571 F.3d at 781 (internal quotation marks and citation omitted). "A debtor is entitled to sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment to maintain a minimum standard of living." Piccinino, 577 B.R. at 565.

North Dakota makes several unsubstantiated statements regarding the reasonableness of Haugen's expenses. Rather than explaining how the Bankruptcy Court erred in determining certain expenses were unreasonable, at times North Dakota simply points to Haugen's burden to prove the expenses were reasonable. North Dakota also argues the Bankruptcy Court improperly shifted the burden. The Bankruptcy Court stated,

> North Dakota's suggestion that Debtor reduce her food budget by $330 a month is also troubling because North Dakota points to no evidentiary or legal support for this proposal. It simply speculates that a 50% reduction in restaurant food purchases is appropriate, while reminding the Court that it 'may not engage in speculation when determining net income and reasonable and necessary living expenses.'

See Doc. No 1-1, p.22. This case is analogous to *Walker*, 650 F.3d 1234 (8th Cir. 2011), where the Eighth Circuit Court of Appeals stated, "[a]side from challenging specific expenses as

10

unreasonable, [the creditor] did not rebut the findings of fact on which this calculation is based, nor did it identify a scenario under which [the debtor] could realistically increase the household's income." 650 F.3d at 1234. North Dakota argues that Haugen "has substantial room to tighten her budget and she has resources available to service her student loan debt." See Doc. No. 5, p. 27. However, North Dakota has not identified how Haugen could realistically increase her income and tighten her budget enough to make payments on the student loans while maintaining a minimal standard of living.

Similarly, North Dakota did not cite any binding authority that stands for its contention that a minimal standard of living requires a debtor to forgo all recreation and entertainment expenses. In *Walker*, the Eighth Circuit Court of Appeals noted that though it may question the wisdom of particular purchases at issue, on the basis of the record before it, the debtor could not afford to make payments on the student loans and still maintain a minimal standard of living. 650 F.3d at 1234. Expenses must be considered "in light of the overall financial and interpersonal context" of the debtor's household because "fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy." Id. at 1235.

Haugen's expenses must be considered in light of her overall financial context. The Bankruptcy Court acknowledged that though some expenses may toe the line of reasonable and necessary, the Debtor's frugality in other areas is relevant to the analysis of her standard of living. Specifically, the Bankruptcy Court noted that the Debtor and her husband maintain full-time jobs, live in a three-bedroom apartment with three children, take no vacations apart from visiting their parents, share a 2007 Chevrolet Uplander, maintain staggered work schedules that allow the family to avoid daycare expenses, buy clothes from secondhand stores, anticipate increased medical

expenses due to their oldest daughter's anxiety, and anticipate an increase in costs arising from their youngest child, whom was born after the Debtor filed for bankruptcy. Similar to *Walker*, while the Court may question the wisdom of some of the Debtor's entertainment and food expenses, based on the record as a whole, the Debtor cannot afford to make payments on the student loans and still maintain a minimal standard of living.

Additionally, North Dakota argues the Bankruptcy Court engaged in speculation because the Debtor testified that she used IRS standards to budget for food and housekeeping, miscellaneous expenses, and personal care products and services on her Schedule J. While these estimates are perhaps speculative, the Bankruptcy Court based its factual findings on testimony, bank statements, and other evidence presented at trial. The Bankruptcy Court stated it "adjusted the Haugens' monthly expenses reported on Schedule J to reflect evidence regarding routine expenses received at trial." See Doc. No. 1-1, p. 20. Thus, the Bankruptcy Court did not engage in speculation in determining the Debtor's reasonable and necessary living expenses. Similarly, North Dakota points to several incidents where it believes Haugen fell short of her burden by providing rough estimates. While the Bankruptcy Court acknowledged that Haugen's testimony was sometimes vague and occasionally inconsistent with the bank statements received as evidence, the Bankruptcy Court found that Haugen's bank statements revealed that she underestimated expenses for food, housekeeping supplies, personal care, and miscellaneous expenses by more than $450 per month. Albeit not through Haugen's testimony, the Bankruptcy Court ultimately determined Haugen met her burden through the evidence she presented at trial. The record supports the Bankruptcy Court's findings as to Haugen's reasonable and necessary expenses. The findings are not clearly erroneous and thus cannot be set aside.

C.  **OTHER RELEVANT FACTORS AND CIRCUMSTANCES**

This factor permits evaluation of a wide range of facts and issues that may be relevant to determining undue hardship, including:

> (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.

Piccinino, 577 B.R. at 566 (B.A.P. 8th Cir. 2017). These factors do not provide an exclusive list of items that courts may consideration and courts are not required to address each and every one in a particular case. Id. "The purpose of this final inquiry allows a court to consider any other relevant information that would be persuasive to overcome the income and expense analysis of undue hardship under the first two factors of the totality of the circumstances test." In re Fern, 563 B.R. 1, 5 (B.A.P. 8th Cir. 2017).

When evaluating other relevant factors and circumstances in this case, the Bankruptcy Court noted that this adversary proceeding is "unlike the typical section 523(a)(8) case" because the Debtor is not seeking to discharge a student loan she borrowed to attend college. See Doc. No. 1-1, p.28. Rather, she is seeking to discharge a cosigned loan disbursed to her mother for her mother's education. The Bankruptcy Court acknowledged that as a result, some of the factors typically considered in a 523(a)(8) analysis are not easily applicable in this case. For example, the Bankruptcy Court noted that the factors relating to student loan repayment and the Debtor's intent to discharge debt in part weigh in favor of discharge and in part weigh against discharge. Haugen did not make payments to North Dakota toward the cosigned loan for her mother and conceded

13

that she petitioned for bankruptcy relief because she could not afford to pay the debt arising from the cosigned loan. However, Haugen is not seeking to discharge the student loans she borrowed for her own education. She makes a monthly income-based payment of $89 on her own student loans. The Bankruptcy Court also determined Haugen's failure to make payments or negotiate a deferment or forbearance with North Dakota and her decision to petition for bankruptcy relief to discharge the cosigned loan are mitigated by 1) her mother's representation that she was taking care of the debt and 2) her status as a cosigner[1]. Among other considerations, the Bankruptcy Court also determined Haugen's failure to make payments while the loan was in deferment or forbearance and when the loan was delinquent did not demonstrate bad faith. The Court finds no clear error in the Bankruptcy Court's consideration of other relevant factors and circumstances.

As the Bankruptcy Court acknowledged, the limited trial evidence in this case presented it with a difficult decision. Despite the limitation presented, the Bankruptcy Court made sound factual findings without engaging in speculation. Based on the record as a whole, Haugen's past, present, and reasonably reliable future financial resources are insufficient to meet the monthly obligation to North Dakota while maintaining a minimum standard of living. The Court finds Haugen met her burden of establishing undue hardship by a preponderance of the evidence. Therefore, the Court affirms the Bankruptcy Court's discharge of Haugen's student loan debt owed to North Dakota.

---

[1] In considering the Debtor's cosigner status as a mitigating factor, the Bankruptcy Court cited to *In re Kinney*, 593 B.R. 618, 624 (Bankr. N.D. Iowa 2018), where the Bankruptcy Court for the North District of Iowa held that although the debtor's status as a cosigner has "no legal bearing on this Court's undue hardship determination, it becomes relevant factually. Courts must generally consider the educational benefit obtained and the effect on the debtor's future earning capacity. In this case, Debtor as a cosigner received no educational benefit. This lack of educational benefit thus cuts against prohibiting discharge of the loan."

## IV.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law.  The Court finds the Bankruptcy Court's findings are supported by more than sufficient evidence and North Dakota has failed to demonstrate any error that would merit reversal. For the reasons set forth above, the Court **AFFIRMS** the Bankruptcy Court's decision.

**IT IS SO ORDERED**.

Dated this 25th day of March, 2024.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, District Judge
> United States District Court